IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


**SONJA FOX DORMINEY,**

    **Plaintiff,**

vs.                                                                                               CASE NO. 5:05cv5-LC/WCS

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

### I.    Procedural status of the case

Plaintiff, Sonja Fox Dorminey, applied for supplemental security income benefits. Plaintiff was 41 years old at the time of the administrative hearing,[1] had a 12th grade

---

[1] Plaintiff's date of birth is May 17, 1961. R. 108A. Plaintiff uses that date of birth in her memorandum. Doc. 9, p. 16. Thus, the date of birth of May 17, 1969, as reported in the transcript, R. 39, appears to be incorrect.

education with one year clerical and nurse's aide education. She is a certified nurse's aide, but has no past relevant work. Plaintiff alleges disability due to Arnold-Chiari type I malformation-birth defect in the neck, lower back injury, surgery at L4-S1, permanent nerve damage on the entire right side, loss of use of the left hand and arm, pain in the fingers, hands, arms, stroke, double vision, pernicious anemia, nervousness, panic disorder, and depression. R. 18-19. The Administrative Law Judge found that Plaintiff had the residual functional capacity to perform a range of light and sedentary unskilled work, and was not disabled as defined by Social Security law. R. 26.

**II.    Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the

national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## III.  Analysis

Plaintiff first contends that the Administrative Law Judge erred at step 2 in finding that her depression was not a "severe" impairment. At step 2 of the analysis, the issue is whether Plaintiff has shown that she has a condition which has more than "a minimal effect on her ability to: walk, stand, sit, lift, push, pull, reach, carry, or handle, etc." Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521). "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

"[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' " Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), *citing* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274. "Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady). A "severe impairment" is a "de minimis requirement which only

screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 n.9 (11th Cir. 1987), *quoting* Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985). It also has been characterized by the Supreme Court as a criterion which identifies "at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into consideration." *Id.*, *quoting* Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

    The record evidence of depression and anxiety is the following. On July 10, 1998, Ernique J. Fernandez, M.D., performed a consultative neurological examination on Plaintiff. R. 177-180. He determined that Plaintiff's experience of pain "has been severe enough to interfere with activities of daily living," and he found her "unable to bend, squat, kneel, climb, or sit for prolonged periods of time." R. 180. He further found: "It appears that because of the chronic pain she has developed an underlying depression." *Id.*

    On February 11, 2000, Plaintiff was seen by Jerry J. Berger, M.D., at the University of Florida Anesthesiology Pain Management Center. R. 253-255. Dr. Berger found that Plaintiff had "a history of panic disorder as well as depression which may be contributing somewhat to her overall presentation." R. 255. Dr. Berger said that he "would like for her to be seen by our psychiatrist here as well to address some of the other ongoing psychological issues which undoubtedly [are] a significant contributor to her pain syndrome." *Id.*

A psychological evaluation was conducted on June 26, 2000.  R. 256.  It was noted that Plaintiff "reported symptoms consistent with a severe levels [sic] of depression."  *Id*.  It was observed during the interview that Plaintiff

> was often quite tangential when responding to questions, frequently she became tearful and her ability to communicate her ideas seemed compromised.  It was unclear the degree to which these symptoms were related to her depressed mood, lack of sleep and/or potential effects of medication withdrawal.

*Id*.  It was further noted that: "Interview and testing data suggest that [Plaintiff] has been severely affected by her pain condition."  *Id*.  She was informed of the services available through the Psychology Clinic, and it was suggested that she be evaluated for medication to assist with her "sleep difficulties and symptoms of anxiety and depressed mood."  *Id*.

In November, 2001, Plaintiff was seen at Meridian Behavioral Healthcare, Inc., relating that she had a long history of alcohol abuse, and more recently, drug abuse.  R. 366, 368-369.  This treatment had been ordered by a court after a DUI in March, 2001.  R. 382.  Plaintiff had started drinking alcohol abusively after he son's death on March 21, 2000, but she stopped on March 21, 2001, the date of her DUI arrest, which was also the anniversary of her son's death.  R. 375, 377, 390, 385, 420.  She reported using cocaine for about two months after the DUI arrest, until August, 2001.  R. 390.  She reported depressed mood, loss of interest and pleasure, sleep disturbance, and fatigue, and symptoms of anxiety.  R. 383.  Plaintiff then underwent a period of substance abuse therapy which she completed successfully.  *E.g.*, R. 414.

On June 12, 2002, Plaintiff was again evaluated at the same clinic.  R. 370-378.  She reported again that she was depressed due to the loss of her 18 year old son.  R.

371, 377.  The intake evaluator found that her recent memory and concentration were not intact.  R. 371.  It was thought that her judgment and insight were only fair.  R. 374.  The evaluator noted that Plaintiff had been a patient at the clinic for substance abuse and "successfully completed the program.  She report[s] no previous substance abuse problems and none since."  *Id*.  The diagnosis was major depressive disorder, recurrent, and generalized anxiety disorder.  R. 378.  The evaluator assigned a Global Assessment of Functioning (GAF) score of 40, and 35 for the past year, which included the period following the DUI and the substance abuse therapy.[2]  *Id*.

On October 23, 2002, it was noted by Ken Grauer, M.D., that Plaintiff had a past medical history significant for bipolar disorder, and was currently taking Zyprexa[3] and Celexa.[4]  R. 431.  Plaintiff testified at the administrative hearing that she was treated by Dr. Stovall for depression and a bipolar condition, and that she took Zyprexa as prescribed by Dr. Stovall.  R. 50.  She said that the medication had calmed her down and she could deal with things better.  R. 53.

---

[2] "The GAF scale reports a 'clinician's assessment of the individual's overall level of functioning.' *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 1994)."  Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002).  A GAF score of 30 to 40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  Schwarz v. Barnhart, 70 Fed.Appx. 512, 516, 2003 WL 21662103, *4 (10th Cir. 2003) (not selected for publication)

[3] Zyprexa is a psychotropic agent used for the treatment of schizophrenia and as a short-term treatment for manic episodes associated with Bipolar I disorder.  PHYSICIANS' DESK REFERENCE (2004), pp. 1857-1858.

[4] Celexa is a serotonin reuptake inhibitor used for depression.  PHYSICIANS' DESK REFERENCE (2004), p. 1292-1293.

Defendant contends that even if it was error to find that Plaintiff's depression is not a "severe" impairment, the error was harmless. Cited for this is Maziarz v. Secretary of Health and Human Services, 837 F.2d 240 (6th Cir.1987). In Maziarz, the court reasoned that since the ALJ had found several other impairments to be "severe" and proceeded to other steps of the analysis, "the Secretary *could* properly consider" the condition found to be not "severe" in those steps and therefore this was not "reversible error." 837 F.2d at 244. Apparently the Sixth Circuit applies this rule both when it is clear that the ALJ in fact considered the particular impairment in determining residual functional capacity, and when the particular impairment is not mentioned again. *See,* Ortiz-Rosado v. Commissioner of Social Security, 12 Fed.Appx. 349, 351 (6th Cir. 2001) (unpublished) (evidence that the ALJ did consider the impairment) with Johnson v. Commissioner of Social Security, 210 F.3d 372, 2000 WL 332059, *3 (6th Cir. 2000) (table) (no error where ALJ went on to step 4, no mention of whether the record contained evidence that the impairment was in fact considered). The rule in Maziarz apparently has not been adopted in any other circuit.

The harmless error rule of Maziarz should not be applied here. By finding that Plaintiff's mental condition was not a "severe" impairment at step 2, the ALJ determined that her mental condition could not possibly affect her ability to do work. Having made that finding, it is improbable that the ALJ gave Plaintiff's mental health a second thought at subsequent stages of analysis, and there is nothing in this record to show that he did. Indeed, he wrote that "all *medically determinable* impairments are considered in the remaining steps of the sequential analysis," but he found that "the claimant has *no* medically determinable mental impairment." R. 20 (emphasis added). Plainly, then, he

did not at all consider Plaintiff's mental health at steps 4 and 5.  The court, therefore, should address the merits of this claim.

Defendant further contends that the finding at step 2 that Plaintiff's depression was not a "severe" impairment was supported by substantial evidence in the record.  Cited in part for this argument is that Plaintiff only had two counseling sessions for her depression.  R. 300, 388.  This is incorrect.  Plaintiff began a second period of treatment at Meridian Behavioral Healthcare on April 12, 2002, and had a counseling session.  R. 410.  She was also counseled on June 12, 2002, June 24, 2002, and August 12, 2002.  R. 363, 370, 400, 392.  She missed appointments on June 17, 2002, July 8, 2002, August 26, 2002, and September 10, 2002.  R. 402, 396, 390, 388.  Thus, the finding that Plaintiff had only two counseling sessions is not supported by substantial evidence in the record.  Plaintiff had four counseling sessions over a five month period.  In the same period, she missed four appointments.

Defendant also contends that the GAF score of 40 was an intake assessment on June 12, 2002, and does not properly account for improvements after medications were prescribed and taken.  Defendant points out that Plaintiff reported on July 29, 2002, that the medications prescribed for her depression had "helped her greatly."  R. 300.  Also, Dr. Quillen stated on August 27, 2002, that while Plaintiff had recently been diagnosed as having bipolar disorder, her symptoms were controlled by her medications and she reported feeling "much better in regards to her anxiety and depression and bipolar symptoms."  R. 274.  Plaintiff herself said at the administrative hearing that the medication had calmed her down and she could deal with things better.  R. 53.  Also noted is that three years earlier, on August 23, 1999, the consultative psychological

examiner, David M. Bortnick, Ph.D., determined that Plaintiff "can perform work or work-related activities without any psychological restrictions." R. 222.

Defendant's arguments are persuasive based upon a review of several court of appeals cases. In Banks v. Massanari, 258 F.3d 820 (8th Cir. 2001), the claimant had stopped taking illicit drugs in July, 1996, when she began group therapy, and by April, 1997, her depression was controlled by medication. Apparently as a consequence of this improvement, she had missed six of her scheduled appointments. 258 F.3d at 825-826. She was attending church and doing volunteer work with elderly people in a nursing home and working with HIV patients. Id., p. 825. Records relied upon by the claimant to show a "severe" impairment predated her course of medications. Id. On this record, the court sustained a finding at step 2 that the claimant's depression was not a "severe" impairment.

Similarly, in Hammon v. Barnhart, 124 Fed.Appx. 847, 2005 WL 548253 (5th Cir. 2005) (unpublished), the claimant had been diagnosed with "major depression" with a GAF score of 40. 124 Fed.Appx. at 852-853. One psychiatrist had found that the claimant's concentration was poor. Id., at 853. However, after a period of treatment with Zoloft[5] and Paxil,[6] the claimant was found to be doing "fairly well" and "good." Id. The court found there to be substantial evidence in this record for the finding that the claimant's depression was not a "severe" impairment. Id.

---

[5] Zoloft is prescribed to treat major depressive disorder, obsessive-compulsive disorder, panic disorder, posttraumatic stress disorder, premenstrual dysphoric disorder, and social anxiety disorder. PHYSICIANS' DESK REFERENCE (2004), pp. 2891-2892.

[6] An antidepressant. PHYSICIANS' DESK REFERENCE (2004), p. 1583.

In <u>Torres v. Barnhart</u>, 2005 WL 1652211 (3d Cir. 2005) (unpublished), the claimant had been assigned GAF scores of 40 and 49 at the beginning of mental health treatment. *Id.*, at \*2. It was found to not be error to discount these scores where there had been "a dramatic and positive response to treatment." *Id.* There was evidence that after one year of treatment, the only remaining problem was in concentration and attention. *Id.*

A GAF score of 40 could have resulted in a finding at step 2 that Plaintiff had a "severe" impairment, but this Court's review is only to determine whether the Commissioner's decision is supported by substantial evidence in the record. Relying on the cases cited above, it is in this instance.

Plaintiff also argues that the ALJ erred by not adding limitations caused by depression and anxiety to the hypothetical presented to the vocational expert. The ALJ, however, correctly determined at step 2 that Plaintiff's mental impairment would not be expected to interfere with her ability to work. Thus, it was not error to fail to include some sort of limitation related to Plaintiff's mental condition in the hypothetical posed to the vocational expert.

For these reasons, it is **RECOMMENDED** that the decision to deny Plaintiff's application for supplemental security income benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 1, 2005.

s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 5:05cv5-LC/WCS